# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| MOHAMMAD NAWAZ, M.D. and <br> MOHAMMAD ZAIM, M.D., P.A. <br> <br> v. <br> <br> TOM PRICE, Secretary of the United States <br> Department of Health and Human Services | § <br> § <br> § Civil Action No. 4:16cv386 <br> § Judge Mazzant <br> § <br> § <br> § |
| ZILLE SHAH, M.D. and ZILLE HUMA <br> ZAIM, M.D., P.A. <br> <br> v. <br> <br> TOM PRICE, Secretary of the United States <br> Department of Health and Human Services | § <br> § Civil Action No. 4:16cv387 <br> § Judge Mazzant <br> § <br> § <br> § <br> § |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Mohammad Nawaz, M.D. and Mohammad Zaim, M.D., P.A.'s Complaint for Judicial Review (Dkt. #1) and Zille Shah, M.D. and Zille Huma Zaim, M.D., P.A.'s Complaint for Judicial Review (Shah Dkt. #1).[1] The Court, having considered the administrative records, relevant pleadings, and oral arguments of the parties, affirms the decision of the Secretary of the Department of Health and Human Services to revoke Plaintiffs' Medicare billing privileges.

## BACKGROUND

Plaintiff Mohammed Nawaz, M.D. ("Nawaz") is a Texas cardiologist who practices under the Professional Association Mohammed Zaim, M.D., P.A. Nawaz participated as a provider in the Medicare program. Plaintiff Zille Shah, M.D. ("Shah") is a Texas primary care physician who

---
[1] Docket and administrative record citations refer to civil action number 4:16cv386 unless otherwise indicated by "Shah" preceding the citation, which refers to civil action number 4:16cv387.

practices under the Professional Association Zille Huma Zaim, M.D., P.A. Shah, like her husband Nawaz, also participated in the Medicare program. Plaintiffs' cases are factually similar and allege the same legal theories. Thus, the Court finds it appropriate to analyze the cases together.

Nawaz concedes that he was out of the country during the following periods: June 18–20, 2011; September 27 – October 2, 2011; May 2–4, 2012; and May 20 – June 4, 2013. A.R. at 7, 597–682. Nawaz also concedes that he billed Medicare for services on those dates using his unique Medicare National Provider Identifier ("NPI"). *Id.* Nawaz submitted an affidavit stating he had two cardiologists "covering for me on the above dates." A.R. at 871. Shah also concedes that she was out of the country for the same dates. Shah A.R. at 721–22, 728–89, 790–94. Shah's nurse practitioners performed services, but Shah billed Medicare for her full rate under her own NPI while out of the country. Shah A.R. at 725–94. Shah submitted an affidavit stating she had "lined up primary care providers for coverage in the case of emergency." Shah A.R. at 641.

The Centers for Medicare and Medicaid Services ("CMS") utilizes a contractor, Novitas Solutions, for administrative services. On September 25, 2014, Novitas Solutions contacted Nawaz to inform him that his Medicare privileges are being revoked because he submitted in excess of one hundred Medicare claims during documented periods of travel outside of the United States in 2011, 2012, and 2013. A.R. at 588–89. CMS accordingly revoked Nawaz's Medicare billing privileges under 42 C.F.R. § 424.535(a)(8), effective October 25, 2014, and barred him from re-enrolling for three years. A.R. at 588–89. Similarly, Novitas Solutions contacted Shah to inform her that her Medicare privileges are being revoked because she submitted over ninety Medicare claims during documented periods of travel outside the United States. Shah A.R. at 721–22. CMS accordingly revoked Shah's Medicare billing privileges under 42 C.F.R. § 424.535(a)(8), effective October 30, 2014, and barred her from re-enrolling for three years. Shah A.R. at 721–22.

Following the revocation notices, Plaintiffs submitted corrective action plans to CMS. A.R. at 584–87; Shah A.R. at 703–04. On November 7, 2014, CMS determined that based on the information provided, Nawaz failed to provide "verifiable evidence that [he was] in compliance with Medicare requirements at the time the revocation was issued[.]" A.R. at 580. CMS noted that the corrective action plan did "not negate the fact that claims were submitted for services that could not have been furnished by [Nawaz] on the date(s) of service reported." A.R. at 580. On December 30, 2014, CMS similarly determined that based on the information provided, Shah failed to provide "verifiable evidence that [she was] in compliance with Medicare requirements at the time the revocation was issued[.]" Shah A.R. at 699. CMS noted that the corrective action plan did "not negate the fact that claims were submitted for services that could not have been furnished by [Shah] on the date(s) of service reported." Shah A.R. at 699.

Plaintiffs also submitted requests for reconsideration to CMS. A.R. at 577–79; Shah A.R. at 683–84. On March 9, 2015, CMS upheld Nawaz's revocation by issuing an unfavorable decision. A.R. at 549–551. In its decision, CMS explained that Nawaz "is accountable for his billing number privileges per 42 CFR § 424.506(c)(2). The reason of not being aware that a nurse practitioner cannot file claims under his NPI number without his presence does not correct the deficient compliance . . . ." A.R. at 550. Similarly, on March 31, 2015, CMS upheld Shah's revocation. Shah A.R. at 648–51.

Nawaz, through his attorneys, sought review of CMS's revocation decision by an administrative law judge ("ALJ"). A.R. at 22–34. The parties filed cross motions for summary judgment. A.R. at 112–21, 142–63. The ALJ granted CMS's motion and upheld Nawaz's revocation. A.R. at 259–77. The ALJ cited a 2004 CMS Medicare Learning Network notice that explained, "Physicians do not have to be physically present in the patient's treatment room . . . the

3

physician must be present in the office suite to render assistance, if necessary." A.R. at 5. The ALJ continued, noting that "what Petitioner *does not deny* is that he . . . submitted or caused to be submitted claims for services that he allegedly provided on dates when he was not in the United States. That concession is all that CMS needs in order to authorize revocation." A.R. at 5. Shah similarly sought review by an ALJ, who upheld Shah's revocation for billing for services while outside of the United States. Shah A.R. at 6–34.

Following the ALJ appeal, Nawaz appealed the decision to the Departmental Appeals Board ("DAB"). A.R. at 259–277. The parties briefed the issues and the DAB heard oral argument. A.R. at 259–322. The DAB upheld summary judgment in CMS's favor, finding that Nawaz had submitted claims to Medicare while out of the country, which directly violates 42 C.F.R. § 410.32(b)(3)(ii). A.R. at 6–21. Similarly, Shah appealed her case to the DAB. Shah A.R. at 194–214. The DAB upheld Shah's revocation for the same reasons identified in Nawaz's appeal. Shah A.R. at 6–23.

On June 10, 2016, Nawaz filed a Complaint for Judicial Review, naming Sylvia Mathews Burwell, Secretary for the U.S. Department of Health and Human Services (the "Secretary") as the defendant (Dkt. #1). On October 6, 2016, Sylvia Mathews Burwell filed an answer (Dkt. #9). On January 16, 2017, Nawaz filed an opening brief (Dkt. #17). In February 2017, Tom Price replaced Sylvia Mathews Burwell as Secretary for the U.S. Department of Health and Human Services. On February 16, 2017, Defendant Tom Price filed a response brief (Dkt. #21). On March 3, 2017, Nawaz filed a reply brief (Dkt. #25). On March 6, 2017, Defendant filed a sur-reply (Dkt. #26). On May 15, 2017, the Court held oral argument. On June 14, 2017, Nawaz filed a post-argument letter brief (Dkts. #32, #33). On the same day, Defendant filed a response (Dkt. #34).

On June 10, 2016, Shah filed a Complaint for Judicial Review, naming Sylvia Mathews Burwell, Secretary for the U.S. Department of Health and Human Services as the defendant (Shah Dkt. #1). On October 6, 2016, Sylvia Mathews Burwell filed an answer (Shah Dkt. #9). On January 16, 2017, Shah filed an opening brief (Shah Dkt. #16). On February 16, 2017, Defendant Tom Price filed a response brief (Shah Dkt. #21). On March 3, 2017, Shah filed a reply brief (Shah Dkt. #25). On March 6, 2017, Defendant filed a sur-reply (Shah Dkt. #26). On May 15, 2017, the Court held oral argument. On June 14, 2017, Shah filed a post-argument brief (Shah Dkt. #33). On the same day, Defendant filed a response (Shah Dkt. #34).

## LEGAL STANDARD

A Medicare provider or supplier whose Medicare privileges have been revoked can pursue a judicial appeal of the Secretary's final decision. 42 U.S.C. § 405(g). Judicial review of the Secretary's decision is limited to two inquiries: (1) whether the Secretary applied the correct legal standards; and (2) whether there is substantial evidence in the record to support the Secretary's decision. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000) (citing *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992)); *Maxmed Healthcare, Inc., v. Burwell*, 152 F. Supp. 3d 619, 625 (W.D. Tex. 2016) (same). When considering whether the Secretary applied correct legal standards, courts are required to give "substantial deference" to her interpretation of Medicare's regulations. *Maxmed Healthcare, Inc.*, 152 F. Supp. 3d 619, 625 (citing *Girling Health Care*, 85 F.3d at 215).

When considering whether substantial evidence exists to support the Secretary's decision, courts must be mindful that substantial evidence is more than a mere scintilla. *Id*. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) and *Consol. Edison Co.*

*v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The reviewing court "'may neither reweigh the evidence in the record nor substitute [its own] judgment for the Secretary's.'" *Id*. (quoting *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988)). Ultimately, "[i]f supported by substantial evidence, the decision of the Secretary is conclusive and must be affirmed." *Sid Peterson Mem'l Hosp. v. Thompson,* 274 F.3d 301, 311 (5th Cir. 2001) (quoting *Richardson,* 402 U.S. at 391).

## ANALYSIS

In Plaintiffs' briefing, they allege CMS denied Plaintiffs procedural due process by granting summary judgment rather than allowing an oral hearing before the ALJ. Plaintiffs contend they timely requested an oral hearing to which they were entitled but the ALJ denied them the opportunity to present oral argument. However, Plaintiffs cite no authority suggesting they are entitled to oral argument and concede "an ALJ is empowered to grant summary judgment, just as a Court is empowered under Rule 56 of the Federal Rules of Civil Procedure." (Dkt. #17 at 7). The Fifth Circuit and other courts approve of administrative summary judgment in Medicare cases. *See Cedar Lake Nursing Home v. U.S. Dep't of Health & Human Servs.*, 619 F.3d 453, 457 (5th Cir. 2010) (upholding an ALJ's grant of CMS's motion for summary judgment); *Crestview Parke Care Ctr. v. Thompson*, 373 F.3d 743, 750 (6th Cir. 2004) ("Given that federal district courts can decide cases as a matter of law without an oral hearing . . . it would be bizarre if administrative agencies . . . modeled after the federal courts . . . could not follow a similar rule"). The Court finds the ALJ did not deprive Plaintiffs of procedural due process.

Next, Plaintiffs allege that CMS based their decision upon an erroneous interpretation of the law. Specifically, Plaintiffs allege that 42 C.F.R. § 426.10(b) does not require the personal, on-site presence of the billing physician. Section 426.10(b) provides, "In general, services and supplies must be furnished under the *direct supervision* of the physician (or other practitioner) . . .

only the supervising physician (or other practitioner) may bill Medicare for incident services." (emphasis added). Section 410.32(b)(3)(ii) defines "direct supervision," and provides, "the physician must be present in the office suite and immediately available to furnish assistance and direction throughout the performance of the procedure." The Court finds a clear violation of § 426.10(b) because Plaintiffs could not directly supervise while outside of the United States. It is undisputed that Plaintiffs were out of the country. Yet Plaintiffs billed Medicare as if they had been in the office suite. The regulations precisely prohibit Plaintiffs' actions. *See* 42 C.F.R. § 424.535(a)(8)(i)(B) (prohibiting providers from submitting claims when the "directing physician or beneficiary is not in the state or country when services were furnished"). In his post-hearing briefing, Nawaz again asserts that a nurse practitioner may bill under the original billing physician's NPI rather than the supervising physician's NPI. But the regulations Nawaz cites provides, "only the *supervising* physician (or other practitioner) may bill Medicare for incident to services." 42 C.F.R. § 426.10(b)(5) (emphasis added). Further, even if the regulations were not clear, the Court is required to give "substantial deference" to the Secretary's interpretation of Medicare's regulations. *Maxmed Healthcare, Inc.*, 152 F. Supp. 3d 619, 625 (citing *Girling Health Care*, 85 F.3d at 215). The Court finds the Secretary applied the correct legal standards and did not base her decision on an erroneous interpretation of the law.

Plaintiffs also challenge their Medicare billing privileges revocation on factual grounds. Nawaz contends he did not abuse his Medicare billing privileges because he "demonstrated that with respect to the billings in question where he was out of the country, there nevertheless was proper coverage and supervision by another practitioner in compliance with the law" (Dkt. #17 at p. 14). Nawaz supports this theory based on an affidavit he submitted, which states he had two cardiologists "covering for me on the above dates." A.R. at 871. Shah makes similar arguments,

supported by a similarly vague affidavit. Shah A.R. at 641. As the DAB noticed, it is unclear whether Plaintiffs argue that nurse practitioners or other physicians provided the supervision for services "incident to" the billing physician's care. However, both arguments fail. If Plaintiffs are referring to a nurse practitioner as supervisor, the nurse practitioner who furnished the services would be the auxiliary personnel and could not supervise herself under § 410.26(b)(5).

If Nawaz is referring to the alleged "2 cardiologists covering for [him] on the above dates," his argument would still fail. A.R. at 871. Similarly, if Shah is referring to the primary care providers she "lined up . . . for coverage in the case of emergency," her argument would still fail. Shah A.R. at 641. First, the allegations are overly vague. The regulations require direct supervision in the office suite and Plaintiffs have not provided "specific evidence in the summary judgment record demonstrating that there is a material fact issue" regarding the alleged covering physicians. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). In his original briefing, Nawaz cites *Anderson* to urge the Court to accept the vague assertion that the two cardiologists "covering" for Nawaz somehow neutralizes the clear violation of Nawaz billing Medicare under his NPI while out of the country. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986) (determining the "evidence of the nonmovant is to be believed, and all *justifiable* inferences are to be drawn in his favor") (emphasis added). But Nawaz asks the Court to draw an unjustifiable inference. Even if the Court were to draw the unjustifiable inference that cardiologists were both on site and directly supervising the nurse practitioners, it is undisputed that Nawaz billed Medicare under his NPI at his full rate while out of the country. Nawaz offers no evidence to allow the Court to draw an inference—much less a justifiable one—to show he did not clearly violate 42 C.F.R. § 426.10(b).

Second, even if the Plaintiffs' alleged covering physicians directly supervised the nurse practitioners—which the administrative record does not support—Plaintiffs incorrectly billed

Medicare under their own NPIs. Nawaz billed for his full rate under his NPI as if he were supervising the nurse practitioner, which the regulations clearly prohibit. *See* 42 C.F.R. § 424.535(a)(8)(i)(B) (prohibiting providers from submitting claims when the "directing physician or beneficiary is not in the state or country when services were furnished"). The same is true for Shah. The administrative record does not contain any evidence that the alleged covering physicians directly supervised the nurse practitioners. The Court finds the Secretary applied the correct legal standard and based her decision on substantial evidence.[2]

Plaintiffs also contend that CMS violated their due process rights for failing to consider their corrective action plan. Plaintiffs allege the corrective action plans were "totally ignored" and the Secretary "faile[d] to give even the slightest consideration" to them (Dkt. #25 at p. 5–6). First, CMS received and evaluated Plaintiffs' corrective action plans. CMS explained that while Plaintiffs' corrective action plans "give[] an explanation of the circumstances, [it did] not negate the fact that claims were submitted for services that could not have been furnished by you on the date(s) of service reported." A.R. at 360; Shah A.R. at 699. Second, Plaintiffs provide no support for the notion that CMS must accept their corrective action plans. The regulations recognize that CMS may "refuse[] to reinstate a provider or supplier's billing privileges." 42 C.F.R. § 405.809(b)(2). Third, "[t]he refusal of CMS or its contractor to reinstate a provider or supplier's billing privileges based on a corrective action plan is not an initial determination" subject to this Court's review. *Id*. Finally, even if the Court had jurisdiction to consider Plaintiffs' arguments,

---

[2] Plaintiffs argue that the ALJ relied on HHS Special Agent Matthew Kirk's "conclusory" and "argumentative" declaration. (Dkt. #21 at p. 17); (Shah Dkt. #21 at p. 16). But the ALJ did "not rely on anything in the affidavit to establish facts that are in dispute." A.R. at 11; Shah A.R. at 12. The Court finds that because Plaintiffs conceded they billed Medicare while out of the country, there is sufficient evidence to uphold the Secretary's decision to revoke Plaintiffs' Medicare billing privileges.

9

Plaintiffs have not shown CMS's decision lacked substantial evidence or applied the incorrect law. *See Estate of Morris*, 207 F.3d at 745.

Next, Plaintiffs contend CMS's revocation constitutes a "taking" under the Fifth Amendment. This claim fails at the outset because Plaintiffs cannot show they hold a protected property interest in their continued participation in the Medicare program. Enrollment in Medicare as a provider is not a constitutional right. Plaintiffs rely on a Ninth Circuit opinion that concluded a physician had a liberty interest that was implicated by his exclusion from the Medicare program. *See Erickson v. U.S. Dep't of Health & Human Servs.*, 67 F.3d at 862–63 (9th Cir. 1995). But "[n]o Fifth Circuit authority exists for the proposition that physicians have a protectable liberty interest in their status as participating health care providers under Medicare." *Sudderth v. Shalala*, 1999 WL 1095329, *4–5 (E.D. La. Nov. 30, 1999); *see Kahn v. Inspector Gen. of U.S. Dep't of Health & Human Servs.*, 848 F. Supp. 432, 438 (S.D.N.Y. 1994) (finding that plaintiff "does not have a protected property interest in continued participation in the federal Medicare program[,] and so his "exclusion from these health care programs was not an unconstitutional taking").

Finally, Plaintiffs allege the "horrendous penalties imposed were arbitrary, capricious, and unsupported by law" (Dkt. #25 at p. 7). Plaintiffs cite a number of inapplicable and minimally persuasive cases where various courts have deemed administrative penalties excessive. The only Fifth Circuit opinion cited, *In re Bell Petroleum Services*, is readily distinguishable. 3 F.3d 889, 905 (5th Cir. 1993). In that case, the Environmental Protection Agency sought to impose the total cost of cleanup on a single company that was only partially responsible for contaminating a local water supply. *Id.* Here, nothing in the administrative record indicates that Plaintiffs are not wholly responsible for billing Medicare while out of the country. Further, Section 424.535(c)(1) clearly provides that revocations last "a minimum of 1 year, but not greater than 3 years, depending on

the severity of the basis for revocation." The DAB concluded that a three-year revocation was appropriate because Nawaz and Shah submitted over 90 Medicare claims each while out of the country. A.R. at 10; Shah A.R. at 721. The Court agrees with the DAB and finds the Secretary applied the correct legal standards and based her decision to revoke Plaintiffs' billing privileges for three years on substantial evidence in the record. *Estate of Morris*, 207 F.3d at 745.

## CONCLUSION

The Court finds that because the Secretary based her decision to revoke Plaintiffs' Medicare billing privileges on the correct legal standards and "substantial evidence, the decision of the Secretary is conclusive and must be affirmed." *Sid Peterson Mem'l Hosp. v. Thompson,* 274 F.3d 301, 311 (5th Cir. 2001) (quoting *Richardson,* 402 U.S. at 391).

It is therefore **ORDERED** that Mohammad Nawaz, M.D. and Mohammad Zaim, M.D., P.A.'s and Zille Shah, M.D. and Zille Huma Zaim, M.D.'s three-year Medicare billing privilege revocations are hereby **AFFIRMED**.

SIGNED this 28th day of June, 2017.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE